# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
January 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CHADWICK BLANKENSHIP,**
**Claimant Below, Petitioner**

**vs.)  No. 13-1167** (BOR Appeal No. 2048299)
(Claim No. 960005020)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**LAST CHANCE LEASING COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Chadwick Blankenship, by Timothy Rosinsky, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Office of the Insurance Commissioner, by Gregory Evers, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated October 25, 2013, in which the Board affirmed an April 10, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's February 3, 2011, decision, which denied a request for permanent total disability benefits. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Blankenship, an underground coal miner, was injured in the course of his employment on August 21, 1995, when he slipped and fell. The Order or Orders of compensability are not of record, but it appears that the claim was held compensable for lower back sprain/strain and contusion of the left knee and wrist. Mr. Blankenship has met the first two thresholds for permanent total disability benefits, and the sole issue on appeal before this Court is whether he is capable of engaging in substantial gainful employment.

Mr. Blankenship underwent a functional capacity evaluation on November 6, 1996, at Logan Regional Hospital Rehabilitation Services Department. His test performance was severely impaired by low back pain with radiation into the left leg. His abilities did not match the requirements of his pre-injury position, and he had poor potential to meet those requirements due to low back pain and poor motivation. He had the ability to increase his physical demand level to the low-medium category through a work hardening program. He completed seventeen out of twenty work hardening sessions. He was limited by poor motivation and back pain. He consistently demonstrated a slow work pace, poor productivity, and occasionally reported that he did not wish to return to his pre-injury employment. Vocational rehabilitation was recommended due to functional deficits and an unwillingness to return to his pre-injury position.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on January 18, 1999, in which he diagnosed sprain of the left wrist, left knee, and lumbar spine. He concluded that Mr. Blankenship was at maximum medical improvement, required no further treatment, and could work at the sedentary physical demand level. He was limited to sedentary work mostly due to his left knee. On September 28, 1999, Roger Baisas, M.D., performed a neurosurgical consultation in which he opined that it was very unlikely Mr. Blankenship suffered from anything of neurosurgical significance. His gait was noted to be slow and deliberate with some kind of exaggeration.

On July 12, 2000, Charles Weise, M.D., performed a psychiatric independent medical evaluation and found that Mr. Blankenship's complaints exceeded the objective findings of emotional illness. His IQ score was in the extremely low range but he read at a high school level. Dr. Weise diagnosed dysthymic disorder, somatoform pain disorder associated with psychological factors and a physical condition, and intellectual test scores in the extremely low range. Mr. Blankenship had reached maximum medical improvement and had 5% whole person impairment due to the compensable injury. His psychological condition would not prevent him from returning to the work he did in the past or prevent him from taking part in retraining. Bruce Guberman, M.D., performed an independent medical evaluation on January 9, 2001, in which Mr. Blankenship's intellectual functioning and mental status were normal. He opined that the impairment was likely to be progressive and assessed 33% whole person impairment.

In January and February of 2001, Patricia Pauley, M.A., and D.H. Webb, M.D., performed psychiatric and psychological evaluations of Mr. Blankenship. They reported he was tearful at several points in the evaluation and his mood was depressed and anxious. His intelligence was estimated to be borderline to low. Dr. Webb noted that Dr. Weise's IQ test showed an IQ of sixty-four which is in the mild mental retardation range; however, the wide range achievement test showed a reading score of eighty-six, which is at the high school level.

Dr. Webb concluded that other factors impacted the IQ test and the claimant appears to function above a mentally retarded level. Results on the MMPI-2, a personality test, indicated Mr. Blankenship may have over-reported his symptoms to some extent. The Axis I diagnoses were mood disorder due to work-related injuries and chronic pain with major depressive like episode and anxiety disorder due to work-related injuries, chronic pain, and generalized anxiety. The Axis II diagnosis was dependent personality traits. The claimant had a global assessment of functioning score of forty. Dr. Webb stated that Mr. Blankenship had rather severe depression and anxiety which are clearly related to the compensable injury. He would likely need treatment for the rest of his life and had moderate impairment of 25-30%.

Mr. Blankenship underwent an independent medical evaluation on July 16, 2001, by Paul Forberg, M.D. Dr. Forberg stated that Mr. Blankenship was not working but without objective physical findings to support his pain complaints, he could return to a modified or transitional work assignment with no heavy lifting, repetitive bending and stooping, prolonged sitting, prolonged ambulation, or repetitive use of the left upper extremity. However, due to Mr. Blankenship's medications and psychiatric diagnoses, it was unlikely he would return to work. He noted that despite the medications he currently takes, Mr. Blankenship reported that his pain was a seven out of ten but he displays no overt pain behavior other than limited range of motion of the cervical and lumbar spine. Further, there are references to exaggerated physical complaints in the medical history.

Ahmed Faheem, M.D., performed a psychological evaluation on July 24, 2001, and found that Mr. Blankenship's attention and concentration were impaired. The Axis I diagnosis was dysthymic disorder and his global assessment of functioning score was sixty. Dr. Faheem opined that he has problems with chronic depression which are partially related to the compensable injury. He had 5% impairment due to the compensable injury and the psychiatric problems were not disabling or progressive. Mr. Blankenship had an IQ score of sixty-four which places him in the mildly mentally retarded range. He was at a sixth grade reading level, fourth grade spelling level, and third grade math level. On September 13, 2001, N. Arthur Lilly, M.S., A.T.C., attempted to perform a functional capacity evaluation. Mr. Blankenship completed grip, pinch, and material handing only. He was unable to complete the rest of the evaluation due to psychophysical lower back pain. He became very upset during the evaluation, and Mr. Lilly stated that unless he could maintain emotional composure his potential for completing the evaluation was extremely poor

A permanent total disability evaluation was performed by Mark A. Hileman, M.A., C.R.C., C.D.M.S., C.C.M., on November 19, 2001. He discovered that Mr. Blankenship had a sixth grade reading level, fifth grade spelling level, and fourth grade math level. An IQ test put him in the mild mentally handicapped intelligence range with a score of sixty-six. Based upon his scores, he would not be a good candidate for a formal training program. Physical capabilities were unclear because he was unable to complete a functional capacity evaluation due to emotional and psychophysical issues. From a physical standpoint, Mr. Blankenship could perform, at best, sedentary to light work with restrictions on sitting, walking, bending, stooping, and use of the upper left extremity. Mr. Hileman found several jobs in the area that he could do but stated that the wages were not high enough to be considered substantial gainful employment

3

as compared to his pre-injury earnings. He conclude that Mr. Blankenship would have difficulty securing gainful employment based upon his previous earnings, work history, current physical and emotional limitations, intelligence, and academic achievement skills.

The Permanent Total Disability Review Board issued its final recommendation on January 13, 2011. It found that Mr. Blankenship's injuries, limitations, and psychiatric impairment do not indicate that he is permanently and totally disabled. Though Dr. Hileman indicated that he would have difficulty finding a job, he identified a number of positions which are available within his geographical area that fit his functional and vocational profile. The claims administrator denied a request for permanent total disability benefits on February 3, 2011.

A final psychiatric independent medical evaluation was performed on July 20, 2012, by Mark Casdorph, M.D. Dr. Casdorph noted that Mr. Blankenship's test of memory malingering scores indicate that he likely intentionally performed poorly in order to present himself as memory impaired. His responses in the pain patient profile validity testing showed he tended to magnify his symptoms and presented an idealized and unrealistic version of his behavior. Mr. Blankenship's WRAT3 indicated he performed at a high school reading level, sixth grade spelling level, and fourth grade math level. His IQ score was sixty-eight which falls in the mild range of mental impairment. Dr. Casdorph diagnosed dysthymia and somatoform pain disorder. He stated that the record contains numerous instances where Mr. Blankenship demonstrated significant psychological overlay to his physical complaints and/or an exaggeration of his physical and psychological findings. He does suffer from some degree of chronic depressive symptoms as the result of compensable and non-compensable factors. He has underlying dependent, passive personality traits. He is not psychiatrically precluded from returning to the workforce and participating in vocational retraining.

The Office of Judges affirmed the claims administrator's decision in its April 10, 2013, Order. It noted that the claim was held compensable for a lower back sprain and contusions of the left knee and wrist. It found that Dr. Casdorph's opinion was very reliable. He conducted a more thorough battery of tests than the other psychiatrists of record and found that Mr. Blankenship's depression was multi-factorial. Dr. Casdorph opined that Mr. Blankenship was not psychologically precluded from working. In contrast, the Office of Judges determined that Dr. Webb's report was out of line with the other reports of record. His psychological testing was inconsistent in that Mr. Blankenship tested in the mild range of mental retardation yet his reading score indicated he was at a high school reading level. Dr. Webb even stated that he functioned above a mentally retarded level. The Office of Judges found that Dr. Webb did not fully consider Mr. Blankenship's MMPI-2 test which suggested that he over-reported symptoms to some extent. Dr. Webb stated that his profile was not invalid because his clinical scale evaluations seemed to be consistent with the symptoms he presented. The Office of Judges concluded that various orthopedic and other reports show that Mr. Blankenship tends to exaggerate his symptoms and there is no reliable diagnostic evidence of objective compensable conditions. Further, Dr. Forberg concluded that his pain complaints were entirely subjective and that his responses to testing were not appropriate and suggested symptom magnification. Because Dr. Webb did not fully consider the evidence that Mr. Blankenship over-reported and magnified his symptoms, his report was given much less evidentiary weight than the others of record.

4

The Office of Judges found that the Permanent Total Disability Review Board properly analyzed Mr. Hileman's report. The Office of Judges found that considering the reports of symptom magnification and the lack of objective diagnostic evidence of a serious injury, Mr. Blankenship's failure to complete the functional capacity evaluation was an instance of him attempting to portray himself as disabled. The Office of Judges stated that it was important to note that there are a substantial number of reports of record indicating that he is prone to symptom magnification and exaggeration. Also, a Dermatomal Evoked Potential study indicated an abnormality at L5-S1; however, the medical reports of record do not place much emphasis on the results. Mr. Blankenship had unremarkable MRIs of the lumbar spine, and his claim is only compensable for sprains/strains.

It was found that the more persuasive reports of record suggest that Mr. Blankenship has over-reported his symptoms. Psychiatric reports by Drs. Weise and Faheem found only 5% psychiatric permanent partial disability, and their reports were determined to be more persuasive than the others of record. Thus, Mr. Hileman was correct in finding Mr. Blankenship could perform sedentary to light unskilled and lower semi-skilled labor. The Office of Judges found that Mr. Hileman was incorrect in his conclusion that the jobs he identified were not gainful employment. He incorrectly compared the wages to Mr. Blankenship's previous earnings. Such comparison is not a factor in the determination of a permanent total disability award. Therefore, the jobs Mr. Hileman identified are appropriate and not excluded.

Mr. Blankenship argued before the Office of Judges that he had fully complied with rehabilitation efforts. The Office of Judges found, however, that he attended only one GED class and did not return because one of his physicians told him that he was not a vocational rehabilitation candidate. This did not occur until after vocational services had attempted an active job search. The Office of Judges found that the physicians of record generally did not find that he was disabled due to physical disabilities. Likewise, the psychiatrists of record did not find that he was disabled from a psychological stand point. Mr. Blankenship's physical and psychiatric injuries are relatively mild, there is no evidence of disc herniations in the spine, and he does not require knee surgery. The Office of Judges therefore held that he was not entitled to permanent total disability benefits because he is capable of engaging in substantial gainful employment.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order. On appeal, Mr. Blankenship argues that he is incapable of engaging in substantial gainful employment due to his severe physical and psychological limitations, limited intelligence, non-transferrable skills, daily medications, and functional illiteracy. The West Virginia Office of the Insurance Commissioner asserts that the evidentiary record establishes that Mr. Blankenship has exaggerated and magnified his symptoms, that his injuries do not prevent him from engaging in substantial gainful employment, and that there are jobs available for him within his geographical area.

After review, this Court agrees with the reasoning of the Office of Judges and the conclusions of the Board of Review. The evidentiary record indicates that Mr. Blankenship is

capable of engaging in substantial gainful employment and that there are jobs available that fit his capabilities. He is therefore not permanently and totally disabled.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  January 20, 2015**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Chief Justice Margaret L. Workman